United States District Court
District of Massachusetts

| | |
|---|---|
| STUART E. MARKS<br>  Appellant,<br><br>  v.<br><br>JOSEPH BRAUNSTEIN,<br>  Appellee. | )<br>)<br>)<br>)<br>)  Bankruptcy Appeal No.<br>)  09-11402-NMG<br>)<br>)<br>) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case, which concerns the enforcement of a promissory note, comes before the Court on appeal from the United States Bankruptcy Court for the District of Massachusetts.

**I. Background**

The Bankruptcy Court record contains the following facts:

In or about October, 1986, Robert P. Marks ("the Debtor") purchased an office condominium unit located at 132 Central Street, Unit 212, Foxboro, Massachusetts ("the Condo") for $166,944. Also on that date, the Debtor executed a promissory note ("the Note") to Citizens Financial Services Corporation ("Citizens") in the amount of $133,450. The Note was secured by a fifteen-year mortgage ("the Mortgage") on the Condo. The Mortgage was recorded in the Massachusetts Land Court at the Norfolk County Registry of Deeds.

Sometime thereafter, the Debtor experienced financial difficulties and, in May, 1994, Citizens assigned the Note and the Mortgage to the Debtor's brother, Stuart E. Marks ("Stuart") for $50,000 consideration. The outstanding balance on the Note at that time is not known or reported. The assignment of the Note and the Mortgage was recorded in the Land Court at the Norfolk County Registry of Deeds. After the assignment, the Debtor made occasional payments on the Note, totaling approximately $51,000, between May, 1994 and November, 2005, but Stuart exerted no pressure on the Debtor to make regular payments on his obligation.[1]

In October, 2005, the Debtor filed a voluntary Chapter 13 bankruptcy petition which was eventually converted into a Chapter 7 liquidation. In August, 2007, Joseph Braunstein ("the Trustee") was appointed as the Chapter 7 Trustee. In June, 2008, the Trustee filed a motion to sell the Condo, which was part of the Debtor's bankruptcy estate and, in the absence of any objections, the Bankruptcy Court allowed the motion one month later. On August 26, 2008, at a public auction, Stuart (the Debtor's brother and the assignee of the Note and the Mortgage) bought the Condo for $220,000 and the deed was recorded in the Land Court. Shortly thereafter, Stuart filed a proof of claim

---

[1] The Trustee alleges that the Debtor, an attorney, satisfied an unspecified portion of his obligation under the Note by providing legal services for his brother, Stuart.

against the estate, asserting his right to enforce the Note.

On September 9, 2008, Stuart moved to "assert a lien and/or determine offset" ("the Lien Motion"), seeking to apply (or "credit bid") a portion of the amount owed to him under the Note toward his purchase of the Condo at the auction.[2] The Trustee opposed Stuart's motion and objected to his proof of claim ("Trustee's Objection").

On June 22, 2009, Bankruptcy Judge William C. Hillman convened a hearing on the Lien Motion and the Trustee's Objection. At oral argument, Stuart admitted that he was: 1) not in possession of the Note, 2) unaware of where it was located and 3) unaware of who was in possession of it. Satisfied that Stuart did not meet the statutory requirements for enforcement of the Note, the Bankruptcy Judge denied the Lien Motion and sustained the Trustee's Objection without an evidentiary hearing.

One week after the hearing, Stuart moved for reconsideration and for a new trial and/or relief from judgment pursuant to Fed. R. Civ. P. 60(b). In support of those motions, he filed an affidavit in which he claimed to have located the Note in a building that he owns and in which he maintains a dental practice. Apparently, Stuart's father, who is a part-time

---

[2] Section 363(k) of the Bankruptcy Code allows the holder of a lien on estate property to "credit bid" at a § 363(b) sale by offsetting part of the lien against the purchase price of the property.

-3-

resident of the building, notified Stuart of a leak in the roof and, when Stuart went to repair the leak, he discovered the Note in a file cabinet.

Stuart's affidavit states that he did not originally search for the Note in the location of the leak because the file cabinet was "within the possession of [his] father and stored within his living space," and "it was in [his] father's home and not [his] own." On June 15, 2010, after hearing brief oral argument, the Bankruptcy Judge denied Stuart's motions. The instant appeal followed.

## II. Analysis

### A. Standard of Review

A federal statute vests in the United States District Courts jurisdiction to hear appeals from interlocutory orders and decrees of bankruptcy judges. See 28 U.S.C. § 158. In reviewing an appeal from an order of a bankruptcy court, a district court reviews de novo "[c]onclusions of law and legal significance accorded to facts". In Re Chestnut Hill Mortgage Corp., 158 B.R. 547, 549 (D. Mass. 1993). The court must, however, accept the bankruptcy judge's findings of fact unless a review of the record demonstrates that they are "clearly erroneous." Id.

B.  Application

There are two issues presented for review.  First, the Court must decide whether the Bankruptcy Judge erred in denying Stuart's Lien Motion and sustaining the Trustee's objection to Stuart's proof of claim.  Second, the Court must decide whether the Bankruptcy Judge erred in denying Stuart's motions for reconsideration and for a new trial and/or relief from judgment.

### 1. Whether the Bankruptcy Judge Erred in Denying the Lien Motion and Sustaining the Trustee's Objection

Under the Uniform Commercial Code as adopted by Chapter 106 of the Massachusetts General Laws, a person may enforce an instrument if he is

> (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3-309.

M.G.L. c. 106 § 3-301.  At the time of the hearing, Stuart stipulated that he was not in possession of the Note and he did not know where it was located nor who was in possession of it.  Given that Stuart was not a holder of the Note, i.e. did not possess it, Stuart could only have enforced it if he satisfied the criteria of § 3-309(a).  Section 3-309(a) permits enforcement of a lost, destroyed or stolen instrument through secondary evidence if the following criteria are met:

> (i) the person was in possession of the instrument and entitled to enforce it when loss of possession

occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

M.G.L. c. 106 § 3-309.

The Bankruptcy Court found that Stuart did not meet the prerequisites of § 3-309 because he offered no proof that he was <u>ever</u> in possession of the Note. Section 3-309(a)(i) contains two separate requirements. A party seeking to enforce a note must show that, prior to the loss or destruction of the note, he 1) was entitled to enforce the instrument and 2) had possession of the instrument. <u>Dennis Joslin Co., LLC</u> v. <u>Robinson Broad. Corp.</u>, 977 F. Supp. 491, 495 (D. D.C. 1997). At the hearing, the Bankruptcy Judge provided an illustration from a White & Summers treatise to clarify the possession requirement of § 3-309:

> A payee who receives a check in payment for service and then loses the check while walking home can still enforce the instrument. Similarly, if the payee was the victim of a mugging on the way home, and the thief made off with the payee's wallet containing the check, the payee remains entitled to enforce the instrument.
>
> If, on the other hand, the drawer had entrusted a messenger with delivery of the check to the payee, and the messenger instead chose to flee to Jamaica with the check, the payee would not be able to enforce the instrument because the payee would not have had possession at the time of the loss.

2 White & Summers, <u>Uniform Commercial Code</u> § 18-2 (5th ed. 2009).

The purpose of the possession requirement in Article 3 is to protect the Debtor from multiple enforcement claims to the same note. Premier Capital, LLC v. Gavin, 319 B.R. 27, 33 (1st Cir. 2004). Although conflicting enforcement claims are not a concern in this particular case, the statute's requirements still apply.

Stuart contends that the Bankruptcy Judge erred in denying the Lien Motion because, although Stuart admittedly lacked possession at the time of the hearing, the recorded assignment of the mortgage was sufficient to establish his standing to enforce the Note. That argument is unpersuasive. Although the Land Court recording is conclusive evidence of the assignment of the mortgage to Stuart, see M.G.L. c. 185 § 54, the mortgage merely provides security for the underlying obligation. It does not constitute evidence that Stuart ever possessed the Note, which is clearly required by § 3-309.[3]

Stuart cites a number of Massachusetts cases in which secondary evidence was admitted to prove the terms of a document that was "lost with no serious fault of its proponent." See, e.g., Capitol Bank & Trust Co. v. Richman, 475 N.E.2d 1236, 1240 (Mass. App. Ct. 1985). This is a common law exception to the Best Evidence Rule (Fed. R. Evid. 1002) which has been adopted by

---

[3] Stuart devotes a substantial portion of his brief to various arguments that Massachusetts should adopt the amendments to § 3-309 which appear to eliminate the separate possession requirement but Massachusetts has not done so and his arguments are thus futile.

the Massachusetts courts. <u>Fauci</u> v. <u>Mulready</u>, 150 N.E.2d 286, 292-93 (Mass. 1958). The Massachusetts Supreme Judicial Court has stated, however, that where Article 3 specifically governs a situation, it trumps any common law default rule. See <u>Union Trust Co.</u> v. <u>McGinty</u>, 98 N.E. 679, 680 (Mass. 1912) (concluding that Article 3 is decisive as to "all matters comprehended within its terms.").

Thus, because, at the time of the hearing, Stuart did not meet the requirements of § 3-309 for proving the existence and terms of the Note through secondary evidence, the Bankruptcy Judge properly denied Stuart's Lien Motion and, accordingly, his decision will be affirmed.

### 2. Whether the Bankruptcy Judge Erred in Denying Stuart's Motions for Reconsideration and for a New Trial and/or Relief from Judgment

To succeed on a motion for reconsideration, the moving party must show that there is either newly discovered evidence or "manifest errors of fact or law". <u>In re Mortgage Investors Corp.</u>, 136 B.R. 592, 597 (Bankr. D. Mass. 1992). The Bankruptcy Judge found that Stuart did not satisfy the requirements of Rule 60(b) and denied Stuart's motions for reconsideration and for a new trial and/or relief from judgment (which he considered collectively). The Bankruptcy Judge agreed with the Trustee's argument that Stuart had not exercised due diligence in searching for the Note which was later found under his own roof and Stuart

admitted that he had not looked in the part of the building where the Note was eventually found.

Stuart sought reconsideration on the basis that the Note he found in the file cabinet one week after the hearing constitutes newly discovered evidence. "Newly discovered evidence" refers to "evidence of fact in existence at the time of trial of which the aggrieved party was excusably ignorant." In re Aguiar, 311 B.R. 129, 135 (B.A.P. 1st Cir. 2004); see also D. Federico Co., Inc. v. New Bedford Redev. Auth., 723 F.2d 122, 130 (1st Cir. 1983). Pursuant to Fed. R. Civ. P. 60(b)(2), newly discovered evidence may be grounds for setting aside a judgment only if:

> (1) the evidence has been discovered since trial; (2) the evidence could not by due diligence have been discovered earlier by the movant; (3) the evidence is not merely cumulative or impeaching; and (4) the evidence is of such a nature that it would probably change the result were a new trial to be granted.

U.S. Steel v. M. DeMatteo Constr. Co., 315 F.3d 43, 52 (1st Cir. 2002).

Here, the parties dispute whether 1) Stuart exercised due diligence in searching for the Note and 2) belated discovery of the Note likely would change the Bankruptcy Judge's decision on the Lien Motion. This Court reviews the Bankruptcy Judge's order denying the motion for reconsideration for "manifest abuse of discretion." In re Aguiar, 311 B.R. at 132 (internal citation omitted).

### a.  Whether Stuart Exercised Due Diligence

The burden of showing that the evidence could not have been discovered by the exercise of due diligence falls upon the movant. Nichols v. Alker, 235 F.2d 246, 246 (2d Cir. 1956). Stuart found the Note in a file cabinet in a building he owned and used as his dental office. Almost ten months passed between Stuart's filing of the proof of claim (September 9, 2008) and the date of the hearing (June 22, 2009) and yet Stuart did not find the Note until one week _after_ the hearing. To explain his failure to find the Note before the hearing, Stuart stated that he did not look in that particular part of the house because his father was living there. In fact, Stuart only searched in that location after the hearing because of a maintenance problem.

A number of federal courts have held that evidence that is in a party's possession is always discoverable through due diligence. Putnam Resources v. Pateman, 757 F. Supp. 157, 170 (D. R.I. 1991); see also Halliburton Energy Servs., Inc. v. NL Indus., 618 F. Supp. 2d 614, 647 (S.D. Tex. 2009) (finding that because documents were located within the party's own files, it did not exercise due diligence in its search). Moreover, misplaced evidence that is found shortly after a trial has ended is not considered "newly discovered" evidence. Longden v. Sunderman, 979 F.2d 1095, 1103 (5th Cir. 1992). Under this line of authority, because the Court has determined that Stuart was,

in fact, in possession of the Note at the time of his original search, his failure to find it demonstrates a lack of due diligence on his part.

### b. Whether the New Evidence Is Likely to Change the Result

The Bankruptcy Judge's decision to deny Stuart's Lien Motion was based on Stuart's inability to show that he possessed the Note before it was lost, as required by § 3-309. Thus, for this Court to find that Stuart's belated discovery of the Note would change the Bankruptcy Judge's ruling on the Lien Motion, this Court must first conclude that Stuart possessed the Note before he lost it. As discussed above, however, a finding that Stuart possessed the Note when he searched for it would compel a finding of lack of due diligence, thereby precluding Stuart from succeeding on a Rule 60(b)(2) motion. Conversely, if Stuart was <u>not</u> in possession of the Note when he searched for it, he would not meet the possession requirement of § 3-309, again foreclosing the possibility of success on the Rule 60(b)(2) motion.

Thus, Stuart is in a Catch-22 position. Either he possessed the Note and was not diligent in producing it or he was diligent in looking for it but did not possess it. Either way, he cannot succeed on a motion for reconsideration. The Court will, therefore, affirm the Bankruptcy Judge's denial of Stuart's motion for reconsideration.

**ORDER**

In accordance with the foregoing, the Bankruptcy Court's denial of Stuart's motions to assert a lien and/or determine offset and for reconsideration are **AFFIRMED** and this Appeal is **DISMISSED**.

So ordered.

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 14, 2010